**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**GLENN W.,**[1]

**Plaintiff,**

**v.**

**Civil Action 2:25-cv-1233**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**OPINION AND ORDER**

Plaintiff, Glenn W. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 8). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed his protectively filed his applications in February 2023, and alleged that he became disabled beginning February 13, 2023. (R. at 154–60, 161–67.) After Plaintiff's application was denied initially and on reconsideration, an Administrative Law Judge ("ALJ")

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

held an in-person hearing on August 15, 2024, at which Plaintiff, who was unrepresented, appeared and testified. (*Id*. at 27–42.) On September 30, 2024, the ALJ issued an unfavorable determination, which became final on August 18, 2025, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 8–26, 1–5.)

Plaintiff seeks judicial review of that unfavorable determination. He raises two contentions of error. First, he contends that the ALJ reversibly erred by failing to adequately accommodate his concentration, persistence, and pace limits. (Pl.'s Statement of Errors 6–9, ECF No. 9.) Second, Plaintiff contends that the ALJ reversibly erred when assessing his subjective symptoms. (*Id*. at 9–14.) The Court finds that both contentions lack merit.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on September 30, 2024. (R. at 8–26.) He initially determined that Plaintiff met the insured status requirements through December 31,

2024. (*Id*. at 13.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 13, 2023. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: obesity; cervical, thoracic, and lumbar spine disease; kidney stones; hypertension; right knee osteoarthritis; anxiety; and depression. (*Id*. at 14.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He must avoid all exposure to workplace hazards such as unprotected heights and dangerous moving machinery; he can tolerate frequent exposure to extreme cold, extreme heat, and vibrations. He can frequently reach in all directions with the right upper extremity. Additionally, he can perform no more than simple and detailed work tasks in a low-stress work environment, involving low production demands. He can tolerate occasional interaction with supervisors, co-workers, and the public.

(*Id*. at 16.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*. at 20.) Relying on the VE's testimony at step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of price marker, housekeeper, and stock checker. (*Id*. at 21.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 22.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As previously explained, Plaintiff contends that the ALJ reversibly erred by: 1) failing to adequately accommodate his concentration, persistence, and pace limits; and 2) inadequately assessing his subjective symptoms. (Pl.'s Statement of Errors 6–14, ECF No. 9.) The Court addresses each contention in turn and finds that neither has merit.

### A. Concentration, Persistence, and Pace Limits

Plaintiff first contends that the ALJ did not "adequately account for [his] limitations in concentration, persistence and pace." (*Id*. at 6.) He notes that he suffered from depression and anxiety disorders during the relevant period and that Dr. Cohen, a medical expert who testified at his August 15, 2024 hearing, opined that he had moderate impairments in concentration, persistence, and pace. (*Id.* at 7.)

The ALJ likewise determined that Plaintiff had moderate limits in these areas. (R. at 15.) To account for those limits, the ALJ restricted Plaintiff to "no more than simple and detailed work tasks in a low-stress work environment, involving low production demands." (*Id*. at 16.) Plaintiff contends, without citing any authority, that these restrictions are insufficient.[4] (Pl.'s Statement of Errors 7, ECF No. 9.)

But "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec*., 636 F. App'x 625, 635 (6th Cir. 2016). Rather, the Sixth Circuit Court of Appeals has found that in the absence of "evidence in the record that provides for specific, concrete limitations on [a claimant's] ability to maintain concentration, persistence or pace while doing simple, unskilled work," a limitation to simple, unskilled work fairly accommodates a claimant's impairments. *Id*. at 636 (citing *Smith–Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 436– 37 (6th Cir. 2014).

Plaintiff does not cite record evidence of any such specific, concrete limits. He notes that Dr. Cohen testified that he "'has trouble finishing what he starts' and has 'problems with stress.'" (*Id*. (citing R. at 34).) Although those statements describe Plaintiff's difficulties, they do not constitute additional concrete functional limits.

More importantly, Dr. Cohen testified that Plaintiff could perform simple and probably detailed, but not complex, tasks in a low-stress job with low production demands. (*Id*. at 34–35.)

[4] Plaintiff cites a psychological examination purportedly done by Dr. Dubey in support of this contention of error. (Pl.'s Statement of Errors 7–8, ECF No. 9.) The record, however, lacks evidence of such an examination. Indeed, it appears that the examination cited by Plaintiff was of a different person who is not a party to this case. Plaintiff similarly cites evidence about another non-party's heart disease. (*Id*. at 2–5.) Despite these apparent errors, the Court is able to discern the general substance of Plaintiff's contention.

The ALJ determined that Dr. Cohen's opinion was persuasive and he incorporated his opined limits into Plaintiff's RFC.[5] Thus, this is not an instance where an ALJ credited opined concentration, persistence, or pace related-limits but then omitted them from an RFC. *Cf. Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516–17 (6th Cir. 2010) (finding an ALJ's hypothetical question inadequate where the ALJ credited an opinion limiting a plaintiff to two-hour work segments and work where speed was not critical but then omitted those limits from the hypothetical).

Accordingly, the Court finds no reversible error in the ALJ's assessment of Plaintiff's limits in concentration, persistence, or pace. Dr. Cohen accounted for Plaintiff's moderate limits in these areas by opining that he was limited to simple and detailed tasks in a low-stress work environment with low production demands. (R. at 34–35.) The ALJ found Dr. Cohen's opinion persuasive and incorporated Dr. Cohen's opined limits into Plaintiff's RFC. (*Id*. at 19, 16.) Plaintiff identifies no additional specific, concrete limits supported by the record that the ALJ failed to incorporate. *Lawrence W. v. Com'r of Soc. Sec.*, No. 3:24-CV-39, 2024 WL 3410677, at *3 (S.D. Ohio July 15, 2024) (finding no error where RFC included a limit to carrying out simple instructions; plaintiff identified no evidence establishing that additional concentration, persistence, and pace limits were warranted) *report and recommendation adopted*, 2024 WL 3653071 (S.D. Ohio Aug. 5, 2024); *Humphrey v. Comm'r of Soc. Sec*., No. 1:16-CV-666, 2017 WL 3821457, at *11 (S.D. Ohio Sept. 1, 2017) (finding hypothetical to VE limiting a plaintiff to simple repetitive work with no fast-paced production work or strict production quotas adequately conveyed moderate concentration, persistence, or pace limits; record disclosed no additional concrete functional limits).

---

[5] Notably, Plaintiff does not challenge the ALJ's evaluation of Dr. Cohen's medical opinion.

Plaintiff's first contention of error, therefore, lacks merit.

**B. Subjective Symptom Assessment**

Plaintiff next contends that the ALJ erred when assessing his subjective symptoms. (Pl.'s Statement of Errors 9–14, ECF No. 9.) Again, the Court is not persuaded.

When a claimant alleges disabling symptoms, an ALJ must follow a two-step process to evaluate them. *See* 20 C.F.R. §§ 404.1529, 416.929; *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). First, an ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," an ALJ must consider all available evidence from medical and nonmedical sources, including medical opinions. *Id.* In addition, SSR 16-3p[6] sets forth factors that an ALJ will

[6] SSR 96-7p, 1996 WL 374186 (July 2, 1996), which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character." *Dooley v. Comm'r of Soc. Sec.,* 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (quoting SSR 16-3p). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all these factors, the ALJ should show that he or she considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

Of particular relevance here, an ALJ will consider whether a plaintiff sought medical treatment and followed prescribed care. SSR 16-3p, 2017 WL 5180304, at *9. Attempts to obtain or follow prescribed treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id.* at *9–10. But an ALJ may draw an adverse inference from a plaintiff's failure to seek or follow treatment only if he or she both considers and explains the plaintiff's possible reasons for that failure. *Id*. at *10; *Dooley,* 656 F. App'x at 119 (noting that an ALJ must consider the claimant's reasons before inferring that a lack of treatment undermines the claim).

An ALJ need only discuss those factors that are pertinent based upon the evidence in the record. SSR 16-3p, 2017 WL 5180304 at, *7–8. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and

any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

Here, the ALJ described the two part-process and then summarized Plaintiff's subjective symptoms as follows:

> The claimant testified at the hearing that he experiences constant pain in his hands. He testified that he experiences anxiety related to his legal history and feels uncomfortable around others. Regarding mental health treatment, he testified that he feels as if his treating psychiatrist just wants to "give him more pills" and does not really treat the true issue.

(*Id*. at 17.)

The ALJ then concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with medical and other evidence. (*Id*.) In reaching that conclusion, the ALJ discussed Plaintiff's treatment before his alleged disability onset date of February 13, 2023; Plaintiff's treatment after that date; the results of Plaintiff's consultative examination; and the opinions of the medical experts who testified at his August 15, 2024 hearing. (*Id*. at 17–19.)

The ALJ then summarized part of that evidence as follows:

> The record reflects that the claimant was incarcerated for about two years between 2021 and 2023. While incarcerated, his marriage became increasingly dysfunctional and he and his wife ultimately divorced. While he reported missing his children, the record reflects that the claimant was otherwise generally unbothered by the dissolution of his marriage. However, he did have some difficulty returning to life outside of the institution and initially expressed feelings of anxiety in public places. His symptoms improved with medication, but the record contains no mental or physical health follow up treatment since mid-2023. The claimant also alleged physical symptoms of pain, but the record does not indicate any significant radiological findings and there is no evidence of any medication prescribed for control of intense pain symptoms. Accordingly, there is nothing in the current record to support any greater limitations that those described in the above-defined residual functional capacity.

(*Id*. at 19–20.)

As this discussion above demonstrates, the ALJ determined that Plaintiff's mental health symptoms were not as disabling as alleged because his symptoms improved with medication and he did not continue to pursue treatment. The ALJ likewise determined that Plaintiff's physical symptoms were not as disabling as alleged because there were no significant radiological findings and Plaintiff was not prescribed pain medications.

Substantial evidence supports those determinations. The record reflects that Plaintiff was incarcerated before his alleged disability onset date. While incarcerated, he was diagnosed with unspecified depressive and anxiety disorders. (*Id*. at 380.) He was prescribed Zoloft, which he reported worked well and caused no side effects. (*Id*.) His condition was described as stable. (*Id*. at 382.)

Plaintiff was released from incarceration on February 12, 2023, one day before his alleged disability onset date. (*Id*. at 376, 378.) At the time of his release, he was provided with forty-two Zoloft tablets. (*Id*. at 397.)

In March 2023, Plaintiff sought mental health counseling at L&P Services ("L&P"). (*Id*. at 422.) He reported some low-level suicidal ideation but denied having a plan or intent to follow through. (*Id*. at 418.) He also reported "difficulties" with arthritis in his knees, back, and hands. (*Id*. at 414.) His mental status examination was otherwise unremarkable. He exhibited normal speech; coherent, logical, and appropriate thought processes; no abnormal or psychotic thoughts; appropriate judgment and insight; good recent and remote memory; adequate concentration; fluent language; and appropriate mood and affect. (*Id*. at 418–21.)

Plaintiff returned to L&P for therapy in April 2023, and no significant changes were noted in his mental status. (*Id*. at 430.) He reported having "issues" a "few days" that were

"normally mild" although he would have a panic attack once a week. (*Id*. at 429, 434.) The record does not contain evidence that Plaintiff ever returned to L&P for therapy after that appointment.

In May 2023, Plaintiff sought treatment from a primary care physician at Memorial Hospital. (*Id*. at 464.) Plaintiff reported that he had previously been prescribed Zoloft and that it worked well, but that he had not taken it for two months. (*Id*. at 464–465.) He also reported increased anxiety and depression and that he felt self-conscious in public because of his recent incarceration. (*Id*. at 465.) Although his depression-screen scores indicated severe depression, his physical and psychological examination findings were normal and his mood was appropriate. (*Id*. at 466.) Plaintiff was prescribed Zoloft and Hydroxyzine HCI. (*Id*. at 464.)

In June 2023, Plaintiff reported to his primary-care physician that his symptoms had improved with Zoloft and that he experienced no side effects from it. (*Id*. at 468, 469.) He had not, however, taken the Hydroxyzine HCI. (*Id*. at 469.) At that appointment, he "had no complaints." (*Id*.) His physical and psychological examinations were normal, he exhibited no cognitive issues, and he had an appropriate mood. (*Id*. at 470.) He was advised to follow up with counseling. (*Id*. at 468.)

Plaintiff was consultatively examined by a physician in July 2023. (*Id*. at 449.) His strength was 5/5 throughout, and he had mostly normal ranges of motion (*Id*. at 454–58.) X-rays showed mild right knee osteoarthritis and multi-level lumbar degenerative changes. (Id. at 459–60.)

In August 2023, Plaintiff reported to his primary-care physician that he was "not doing so good." (*Id*. at 471.) Nevertheless, his physical and psychological examination findings again produced normal findings, and he had no cognitive issues and an appropriate mood. (*Id*. at 473.)

Plaintiff's Zoloft dose was increased, and he was started on Lisinopril. (*Id*. at 471.) Plaintiff was again advised to continue with counseling, and he was referred to a psychiatrist. (*Id*.) But the record does not include treatment records for any subsequent treatments from his counselor, psychiatrist, or his primary-care physician.

Plaintiff does not dispute the ALJ's description of this evidence. Instead, he argues that the ALJ improperly relied on his failure to seek treatment after mid-2023 without adequately considering his reasons for not pursuing such care. (Pl.'s Statement of Errors 12–13, ECF No. 9.) Plaintiff relies on his testimony that he disagreed with his psychiatrist's treatment approach because it "seem[ed] like he just wants to give [him] more pills or up [his dosage]." (*Id*. at 13 (quoting R. at 35).) But the ALJ expressly acknowledged Plaintiff's testimony about his disagreement with his psychiatrist's approach. (R. at 17.)

Moreover, Plaintiff's disagreement with that psychiatrist's approach did not explain the broader treatment gap. Plaintiff did not testify, and the record does not otherwise show, that he was unable to seek care from another psychiatrist. His disagreement with one psychiatrist does not explain why Plaintiff discontinued counseling at L&P or why he did not continue to pursue treatment, including medication management, from his primary-care physician.

Plaintiff also points to evidence that he lived alone, relied on his mother for meals, lacked home internet access because of parole conditions, and drove only limited distances. (Pl.'s Statement of Errors 13, ECF No. 9.) He characterizes these circumstances as "additional uninvestigated explanations for treatment gaps." (*Id*.) But Plaintiff did not testify, and the record does not otherwise establish, that any of these circumstances prevented him from obtaining mental-health treatment. The record does not demonstrate that Plaintiff was unable to use a

telephone, obtain transportation, attend in-person appointments, contact another provider, seek a referral, or access counseling or psychiatric care.

To be sure, SSR 16-3p requires an ALJ to consider pertinent explanations for claimant's limited treatment. It does not, however, require the ALJ to speculate that general background facts, that were never connected in the record to treatment access, created treatment barriers. *See Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 n.1 (6th Cir. 2025) (rejecting claimant's asserted financial explanation for limited mental-health treatment where she identified no record evidence substantiating the claimed constraint); *Dooley*, 656 F. App'x at 119 (affirming where the ALJ considered, but reasonably rejected, the claimant's asserted inability to afford more aggressive treatment).

The Court, therefore, finds no reversible error in the ALJ's assessment of Plaintiff's subjective symptoms. The ALJ considered Plaintiff's disabling allegations, discussed the relevant medical and other evidence, and explained why that evidence did not support limits that were more restrictive than the ones included in Plaintiff's RFC. Although Plaintiff contends that the ALJ failed to adequately consider why he failed to pursue treatment before relying on that failure to discredit his allegations, the ALJ expressly acknowledged Plaintiff's dissatisfaction with his psychiatrist's treatment plan. But Plaintiff identifies no evidence connecting that dissatisfaction, or the other circumstances he cites, to his failure to seek care from other providers including L&P and his primary-care physician. Because the ALJ was required to consider record-based reasons for failing to seek treatment, but not required to speculate about ones that were not established, the ALJ did not reversibly err by considering Plaintiff' lack of treatment.

Plaintiff's second contention of error, therefore, lacks merit.

## V. CONCLUSION

Accordingly, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE